# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Kevin D. Dykes

## DEFENDANTS
County of Chester & Deborah Ryan, District Attorney

**(b)** County of Residence of First Listed Plaintiff: Chester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Chester
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Dolores M. Troiani, Esq., Troiani & Gibney, L.L.P.
1273 Lancaster Ave., Berwyn, PA 19312; (610) 688-8400

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [x] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | | | 835 Patent - Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | **PERSONAL PROPERTY** | | 840 Trademark | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 370 Other Fraud | **LABOR** | 880 Defend Trade Secrets Act of 2016 | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 710 Fair Labor Standards Act | | 480 Consumer Credit (15 USC 1681 or 1692) |
| 190 Other Contract | 360 Other Personal Injury | 380 Other Personal Property Damage | 720 Labor/Management Relations | **SOCIAL SECURITY** | 485 Telephone Consumer Protection Act |
| 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice | 385 Property Damage Product Liability | 740 Railway Labor Act | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 196 Franchise | | | 751 Family and Medical Leave Act | 862 Black Lung (923) | 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 790 Other Labor Litigation | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | 791 Employee Retirement Income Security Act | 864 SSID Title XVI | 891 Agricultural Acts |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | 865 RSI (405(g)) | 893 Environmental Matters |
| 230 Rent Lease & Ejectment | [x] 442 Employment | 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | | 870 Taxes (U.S. Plaintiff or Defendant) | 896 Arbitration |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 535 Death Penalty | **IMMIGRATION** | 871 IRS—Third Party 26 USC 7609 | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** | 462 Naturalization Application | | 950 Constitutionality of State Statutes |
| | 448 Education | 540 Mandamus & Other | 465 Other Immigration Actions | | |
| | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII
Brief description of cause:
Plaintiff subject to adverse employment action due to his race

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
- DEMAND $ Over $150,000 + other
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):* N/A
JUDGE _____  DOCKET NUMBER _____

DATE: January 3, 2022
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __281 Cherry Lane, Kennett Square, PA 19348__

Address of Defendant: __313 West Market St., West Chester PA; 201 W. Market St., West Chester, PA__

Place of Accident, Incident or Transaction: __Chester County, PA__

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __01/03/2022__   *(signature)*   __21283__
         *Attorney-at-Law / Pro Se Plaintiff*                *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.  Federal Question Cases:**
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    *(Please specify):* _____

**B.  Diversity Jurisdiction Cases:**
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
    *(Please specify):* _____

---

### ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __Dolores M. Troiani, Esquire__, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: __01/03/2022__   *(signature)*   __21283__
         *Attorney-at-Law / Pro Se Plaintiff*                *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

| | |
|---|---|
| TROIANI & GIBNEY, L.L.P.<br>By: Dolores M. Troiani, Esquire<br>Attorney I.D. #21283<br>1273 Lancaster Avenue<br>Berwyn, PA 19312<br>(610) 688-8400 | Attorneys for Plaintiff |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN D. DYKES | : | CIVIL ACTION |
| | : | |
| v. | : | NO: 2:22-cv-4 |
| | : | |
| COUNTY OF CHESTER<br>and | : | |
| | : | |
| DEBORAH RYAN | : | |
| District Attorney | : | JURY TRIAL DEMANDED |

### COMPLAINT

AND NOW, COMES the Plaintiff, Kevin D. Dykes, by and through his counsel, Troiani & Gibney, L.L.P. and files this Complaint in the above-referenced action alleging the following:

The Plaintiff is Kevin D. Dykes, who suffered adverse employment actions including termination from his employment as Chief County Detective of the Chester County District Attorney's Office due to his race and retaliation for asserting his Constitutionally protected rights. Plaintiff, by his attorneys, Troiani & Gibney, L.L.P., claims of Defendants a sum in excess of $150,000.00, and in support thereof states the following:

### The Parties

1. Plaintiff, Kevin D. Dykes is an African American individual and citizen of the Commonwealth of Pennsylvania residing at 281 Cherry Lane, Kennett Square, Pennsylvania.

2. Defendant, County of Chester, is a governmental entity operating under the laws of the Commonwealth of Pennsylvania, with a principal place of business at 313 West Market Street, West Chester, PA. At all times material hereto, Chester County was an employer as defined by the, Title VII of the Civil Rights Act of 1964 as amended 42 U.S.C. 2000 e (b), and the Pennsylvania Human Relations Act, 43 P.S. §§ 951 *et seq.*

3. Defendant, Deborah Ryan, is the District Attorney of Chester County, with a principal place of business at 201 West Market Street, West Chester, PA. At all times material hereto, the District Attorney was an employer as defined by the, Title VII of the Civil Rights Act of 1964 as amended 42 U.S.C. 2000 e (b), and the Pennsylvania Human Relations Act, (PHRA) ,43 P.S. §§ 951 *et seq* Relations Act, 43 P.S. §§ 951 *et seq.*

4. At all times material hereto, defendants acted through their agents, servants, and employees, who were acting within the scope of their authority, course of employment and under the direct control of defendants.

5. At all times material hereto, defendants acted in concert with one another.

6. At all times, material hereto, defendant Chester County condoned, ratified, and adopted the actions taken by its sub-unit, the Chester County District Attorney's Office.

7. At all times material hereto, defendants treated plaintiff in a disparate manner and terminated him and engaged in other adverse employment actions due to/ and or motivated by his race.

**Jurisdiction and Venue**

8. This action arises under federal statues, including the federal civil rights laws, therefore, this court has jurisdiction of this matter under Section 706(f) (3) of Title VII, 42.1.S.C.

§2000e-5(f) (3), 28 U.S.C. sections 1331 and 1343 and pendent jurisdiction over the state court claims pursuant to 28 U.S.C. § 1367(a).

9. The unlawful employment practices and other actions giving rise to the cause of action alleged below were committed within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania, and venue lies with this court pursuant to the provisions of 28 U.S.C, 1391(b) and 18 U.S.C. §1965.

10. All conditions precedent to jurisdiction have occurred or been complied with pursuant to 42 U.S.C. section 2000e-5 generally: a charge of employment discrimination was dual-filed with the Pennsylvania Human Relations Commission and over 365 days has elapsed since the date of filing and a charge was filed with the Equal Employment Opportunity Commission within 180 days of the unlawful employment practice. The EEOC has not acted within 180 days of Plaintiff's filing. Plaintiff has requested the Department of Justice to issue a right to sue letter to Plaintiff.   Upon receipt of the letter, Plaintiff shall file it with the court.

**Factual Background**

11. Plaintiff incorporates by reference the prior paragraphs of this Complaint, as though fully set forth at length.

12. Following a distinguished career as a Pennsylvania State Trooper Plaintiff, Kevin Dykes, was hired as a Chester County Detective in 2002 and quickly rose through the ranks, under three different District Attorney Administrations.

13. In 2016, he became the first African American Chief of Detectives following his appointment by then District Attorney Tom Hogan.

14. Chief Dykes has long complained to defendant, Chester County, about the inequities regarding the determination of his salary, upon his elevation to Lieutenant and then Chief County Detective. DA Hogan attempted to rectify the inequities, but the County refused.

15. In November 2019, Deborah Ryan, a Caucasian was elected DA.

16. Chief Dykes made repeated attempts to speak with her but was unsuccessful until December 10, 2019, when she agreed to his request to meet.

17. The meeting was short. At the meeting, she told him that she liked and respected him, but that she was terminating him, "because you were a part of Hogan's administration." Ms. Ryan did not raise any other issues or offer any other explanation.

18. Three days later, Ryan met with the Caucasian male Lieutenant, who was also "part of the Hogan administration." She asked him where he was in his career, a question not posed to Chief Dykes. When he responded that he could retire in about 10 months, she told him she would get back to him. Ryan permitted the Caucasian male to remain employed in the DA's Office, with the same rank, salary, benefits, and administrative duties for a full year so that he could achieve superannuation of his pension. She did not offer this opportunity or even discuss it with Chief Dykes.

19. When Plaintiff again attempted to speak to Ryan, she refused and demanded that Chief Dykes turn in his computer, gun, cell phone, keys to access the building and other items prior to her being installed in office.

20. On January 2, 2020, Ryan responded to Chief Dykes' request to delay his termination, which would occur on January 5, until January 9, in that he had obtained employment at the Sheriff's Office and his position would not be presented to the salary board until that day. He asked that DA Ryan cooperate so that he would not have an interruption in his

pension and could "mitigate his damages." As more fully described below, Ryan's response to plaintiff's request to mitigate his damages, was to engage in a series of retaliatory actions, designed to discredit plaintiff in the eyes of his colleagues and new employer in order to adversely affect the terms and conditions of his employment. She refused to permit him the four days, claiming she did not have any authority to discuss his employment until January 5.

21. Immediately upon assuming office, Ryan had Plaintiff's email and computer access turned off. Similarly situated Caucasian employees who were able to transfer to another department were not denied access to their electronic devices.

22. When Ms. Ryan became District Attorney, Chief Dykes was the only person terminated due to his association with the prior administration.

23. Chief Dykes was able to transfer to the Sheriff's Office, but his salary was reduced by $50,000.

24. Ryan then falsely accused Chief Dykes of a crime, that is "unauthorized use" of his county issued credit card, related to a credit card charge which occurred prior to her taking office and over which she acknowledged she did not have any authority at the time of the purchase.

25. Not only did Ryan permit the Caucasian Lieutenant to remain employed so that his pension would not be affected, but she also elevated the Caucasian Sergeant to Chief. Both white men held administrative positions in the County Detectives office under the previous administration.

26. Plaintiff is an employee subject to Title VII/PHRA protections. He is Black. He does not/did not have policy making authority, he cannot advise the District Attorney as to the exercise of the constitutional or legal powers of the office and he must be a sworn law

enforcement officer. The Chief County Detective is subject to the requirements of the Municipal Police Act and must be certified by the Municipal Police Officer's Education and Training Commission and attend training yearly. He has powers of arrest. The district attorney does not have her own personal police force and therefore the chief is not a member of her personal staff.

27. Defendant County of Chester engages in a policy and practice of ignoring *written* policies to benefit white males, while denying the same benefits to persons of color.

28. By way of example, when Chief Dykes complained that upon his promotion to Lieutenant and later to Chief, he had been denied benefits he accrued while a member of the bargaining unit, including retaining vacation and comp time, his request for matching benefits was denied based upon "policy." In January 2020, the County did not apply the same "policy" to his replacement, DS, a white male, who was designated as "acting" to permit him to retain benefits denied to plaintiff.

29. Chief Dykes contacted the EEOC in May 2020. In July 2020, representatives of the Human Resources Department and the County Solicitor continued to deny that DS received any benefits due to the designation of "acting." On or about August 2021 the County acknowledged DS received benefits as "acting chief" which they refused to approve for plaintiff when he had requested them.

30. Ryan attempted to justify the disparate treatment by claiming that DS had not been approved by the salary board. In fact, the position of Chief County Detective appears on the January 6, 2020 Salary Board Agenda as a full time, not temporary, approved budgeted position. When Ryan announced his appointment in her January 9, 2020, press release, she did not designate him as "acting." In the same, press release Ryan announced the promotion of AC,

(D.A. Hogan's Deputy DA), a Caucasian female to Chief of Staff. She promptly submitted AC's name to the salary board and the Commissioners approved the promotion on January 9, 2020.

31. It was not until after Chief Dykes complained to the County Solicitor that Ryan submitted the present Chief's name to the salary board for approval by the Commissioners on September 27, 2020. As a result, DS was no longer designated as acting and the benefits long denied to Chief Dykes were no longer available to DS. Ryan controlled the timing of the submission and as in the other actions she took, they were all in response to Chief Dykes complaints of disparate treatment.

32. In addition to the Caucasian male Lieutenant who was retained by Ryan for a full year after she terminated Chief Dykes, the County "policies" were disregarded to accommodate another white male, so that he could attain retirement eligibility. By agreement dated June 16, 2015, when a white male facing disciplinary issues requested that he be permitted to remain employed, the County permitted him to use vacation, sick, compensatory and paid time off accrued from May 1, 2015 to August 31, 2016, which enabled him to remain on the payroll and retain his retirement benefits, as well as his other benefits including health insurance, without the necessity of actually appearing at work or earning the benefits.

33. As a result of his complaints of disparate treatment and racial discrimination, Chief Dykes was subjected to retaliation in the form of a campaign to discredit him in the eyes of his new employer and other county employees.

34. On January 16, 2020, Ryan sent an email to Chief Dykes' boss, Sheriff Maddox, accusing him of a crime, that is "unauthorized charges" on the credit card. The email was written in red and bold type. At the time she made the accusation, Ryan knew that her

predecessor had approved the expenditures, which were for professional dues, and that Chief Dykes had not misused the credit card.

35. After Chief Dykes filed with the EEOC, and after the death of George Floyd, the County Commissioners expressed concern that civil unrest and protests would occur in the County. They decided to convene a meeting to discuss and coordinate actions addressing criminal justice reform and racism. Ms. Ryan was invited to attend along with Sheriff Maddox, the first African American female to hold that position and Chief Dykes, the highest ranking African American law enforcement officer, other than the Sheriff, in the County. The meeting occurred on June 8, 2020. Commissioner Michelle Kichline participated by zoom and praised Chief Dykes for the work he had accomplished as Chief County Detective and noted that he was the highest-ranking black law enforcement officer at that time. Ryan also participated in the meeting, along with DS, the Caucasian male she appointed as Chief Detective and MB, the Caucasian male she appointed as first assistant.

36. The County decided to form the Chester County Law Enforcement Task Force on Race and Justice. The County appointed Ryan to head the committee. She promptly excluded Chief Dykes, claiming that only one person from each department should be on the committee: however, Ryan, DS, and MB and at least three others from her office were appointed to the committee.

37. In July, September, and October 2020, Ryan's office complained to Sheriff Maddox about "issues" between their offices. Ryan complained to Sheriff Maddox that there now exists a contentious relationship between the DA's and Sheriff's offices which did not exist when the previous Chief Deputy Sheriff, a Caucasian male, held the job, Chief Dykes now holds.

38. Ryan continues to make unfounded complaints against plaintiff.

## COUNT I
## VIOLATION OF TITLE VII v. CHESTER COUNTY

39. Plaintiff incorporates by reference the averments of the preceding paragraphs as if fully set forth herein.

40. Plaintiff is African American and as such a member of a class protected by Title VII against discrimination based in whole or in part upon an employee's race.

41. The actions of the employer as more fully described above constitute violations of Title VII in that the employer discriminated against Plaintiff in whole or in part due to his race.

42. Plaintiff was subjected to adverse employment actions, including but not limited to termination.

43. As a direct and proximate result of the discriminatory acts and conduct perpetrated against Plaintiff by Defendant, Plaintiff has suffered and will continue to suffer irreparable harm, so that he is entitled to the relief requested below.

## COUNT II
## VIOLATIONS OF THE PENNSYLVANIA HUMAN RELATIONS ACT
## v. CHESTER COUNTY AND DEBORAH RYAN

44. Plaintiff incorporates by reference the averments of the preceding paragraphs as if fully set forth herein.

45. Plaintiff is African American and as such is a member of a class protected by the PHRA.

46. The actions of the employer as more fully described above constitute violations of the PHRA, in that the employer discriminated against Plaintiff in whole or in part due to his race.

47. As a direct and proximate result of the discriminatory acts and conduct perpetrated against Plaintiff by Defendants, Plaintiff has suffered and will continue to suffer irreparable harm, so that he is entitled to relief requested below.

## COUNT III
### VIOLATIONS OF THE PENNSYLVANIA HUMAN RELATIONS ACT - RETALIATION v. CHESTER COUNTY AND DEBORAH RYAN

48. Plaintiff incorporates by reference the averments of the preceding paragraphs as if fully set forth herein.

49. Plaintiff is African American and as such a member of a class protected by the PHRA.

50. Plaintiff was subjected to adverse employment actions, as more fully described above, due to his assertion of his rights protected by the PHRA.

51. As a direct and proximate result of the discriminatory acts and conduct perpetrated against Plaintiff by Defendants, Plaintiff has suffered and will continue to suffer irreparable harm, so that he is entitled to relief requested below.

## COUNT IV
### VIOLATION OF TITLE VII-RETALIATION v. CHESTER COUNTY

52. Plaintiff incorporates by reference the averments of the preceding paragraphs as if fully set forth herein.

53. Plaintiff is African American and as such a member of a class protected by Title VII.

54. Plaintiff was subjected to adverse employment actions, as more fully set forth above, due to his assertion of his rights protected by the Title VII.

55. As a direct and proximate result of the discriminatory acts and conduct perpetrated against Plaintiff by Defendant, Plaintiff has suffered and will continue to suffer irreparable harm, so that he is entitled to the relief requested below.

## PRAYER FOR RELIEF

56. Plaintiff incorporates by reference the averments of the preceding paragraphs as if fully set forth herein.

57. As a result of Defendants' joint and several actions, Plaintiff has suffered mental anguish, emotional distress, a loss of dignity, and self-respect, humiliation, deprivation of income and benefits, loss of job opportunities and assignments and been subjected to unwelcomed notoriety. In that Defendants' actions were outrageous and malicious, Plaintiff requests both compensatory and actual damages in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars and all relief to which he is entitled by statute including injunctive relief to prevent continued deprivation of his rights, costs and attorney's fees.

WHEREFORE, Plaintiff specifically requests the following relief be granted as against the Defendants, jointly and severally:

    a. That he be awarded back pay, front pay, reinstatement to his position, and reinstatement and/or restoration of all job benefits and other compensation, including compensatory damages, as allowed by law, which damages exceed the arbitration limits.

    b. That the Defendants be required to eliminate all unlawful discriminatory practices and procedures including all racially directed terminations/ and discipline and remedy all discriminatory effects of past practices and procedures.

  c. That the Court order that the Plaintiff's attorney's fees, costs and expenses of this litigation be paid by the Defendants.

  d. That the Court enter a declaratory judgment and finding that Defendants, jointly and severally violated Title VII of the Civil Rights Act of 1964, and/or the PHRA.

  e. That the Defendants institute procedures to ensure that Plaintiff remain free from future retaliation.

  f. That Defendants compensate Plaintiff for past and future pain, suffering, mental anguish, emotional distress, harm to reputation, embarrassment, humiliation, loss of enjoyment of life and all consequential damages resulting from their conduct.

  g. That this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00) plus attorneys' fees, pre and post judgment interest, costs, punitive damages, and such other additional relief as this Court deems just and proper, and

  h. To provide such further relief to the Plaintiff as the Court and jury deem necessary, just, equitable and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury in this matter.

Respectfully submitted,

_____
Dolores M. Troiani, Esquire
Attorney I.D. No: 21283
Troiani & Gibney, L.L.P.
1273 Lancaster Avenue
Berwyn, PA 19312
Telephone No: (610) 688-8400
Attorney for Plaintiff
Kevin D. Dykes